UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
01-CV-401(JMR/SRN)

In Re Department 56, Inc., )
Securities Litigation ) ORDER

The Court has considered defendants' motion to dismiss the consolidated amended class action complaint. The motion is granted.

I. Background

Plaintiff seeks to represent a putative class and assert a claim of securities fraud. The consolidated amended class action complaint ("complaint") alleges Department 56, Inc. ("Department 56"), and Susan E. Engel, its Chief Executive Officer, engaged in a series of fraudulent acts designed to mask the true state of the company's affairs. According to the complaint, these acts occurred between February 24, 1999, and April 26, 2000. The putative class consists of purchasers of the company's common stock during this period.

Department 56 is engaged in the design, importation, and distribution of collectibles and giftware. Its shares are publicly traded on the New York Stock Exchange.

All parties agree that -- prior to the class period -- Department 56 decided to replace its existing computer system with a "fully-integrated system," which was expected to coordinate all aspects of its business and obviate pending Y2K concerns. The new

computer system was put into place on January 1, 1999. It did not work. Its various malfunctions created significant problems with the company's orders, shipments, and invoicing.

This lawsuit is premised on the claim that defendants issued false and misleading statements about the company's new computer system and the various problems resulting therefrom. The complaint alleges these statements artificially inflated the price of Department 56 common stock during the class period.

During this time, the company issued no fewer than eight press releases, and four separate Securities and Exchange Commission ("SEC") filings concerning the new computer system and the problems it was causing. According to the complaint, however, these disclosures were fraudulent. The disclosures included the following:

1. <u>February 24, 1999, Press Release</u>

The complaint adverts to a press release issued seven weeks after the new computer system was implemented. This release stated, "While this new system will be a valuable asset in facilitating future growth, the installation has changed the timing of the receipt of orders from customers and product shipping, thereby impacting comparability to prior years' levels. However, this should not impact full-year results."

The complaint neglects to refer, however, to another statement in the press release that "first quarter 1999 order expectations and sales expectations for 1999 are . . . dependent on . . . the efficiency of information systems developed to collect, compile and execute customer orders." (Wilson Decl., Ex. A.)

2. <u>April 28, 1999, Press Release and 1999 First Quarter SEC Form 10-Q</u>

These disclosures announced Department 56's first quarter financial results. The SEC form included various consolidated financial statements, which showed decreases in sales and cash collections. The form stated, "The decrease in sales was principally due to delays experienced from the implementation of the Company's new integrated computer system and a decrease in volume as a result of the timing of product received from the Company's suppliers." (<u>Id.</u>, Ex. B, C.)

3. <u>June 9, 1999, Press Release</u>

This press release was captioned "System Implementation Difficulties Expected to Impact 1999 Results." (<u>Id.</u>, Ex. D.) The release publicized the company's revised sales goals. It stated that Department 56 revised its goals because "year-to-date order totals that reflect recent adjustments to first quarter orders and order-taking difficulties, both caused by the implementation of the Company's new enterprise-wide system."

4. <u>July 27, 1999, Press Release and 1999 Second Quarter SEC Form 10-Q</u>

These disclosures announced second quarter financial results. The release stated, "The strength of the quarterly results was due in part to shipments originally scheduled for the first quarter not being shipped until the second quarter because of earlier difficulties faced in the implementation of the company's new enterprise-wide computer systems."

5. <u>October 26, 1999, Press Release and 1999 Third Quarter SEC Form 10-Q</u>

These disclosures announced third quarter financial results. The press release stated, "The [third] quarter's results as well as our outlook for 1999 continue to be hampered by this year's implementation of a new enterprise-wide computer system."

6. <u>December 22, 1999, Press Release</u>

This press release was captioned "Department 56 Provides Update on the Progress of the ERP System Implementation System." (<u>Id.</u>, Ex. J.) According to the complaint, this release "disclos[ed] for the first time the nature of the customer documentation problems that had only been vaguely alluded to in previous releases."

7. <u>February 23, 2000, Press Release and 1999 SEC Form 10-K</u>

These disclosures announced fourth quarter financial results. The press release disclosed, "[1999] fourth quarter and fiscal year 1999 earnings per share were impacted by a decline in net margins

due to additional reserves on customer balances and higher operating expenses associated with the Company's implementation of its new computer system . . . ."

8. April 26, 2000, Press Release

This press release disclosed Department 56's decision to increase its bad debt and claims reserves by $12 million. Following the release, the price of Department 56 shares fell from $15.18 to $9.12. At one point during the class period, the company's shares had traded as high as $33.18.

This lawsuit was commenced on March 5, 2001, with the filing of the initial complaint. The consolidated amended class action complaint accuses Department 56 and Ms. Engel of violating Section 10(b) of the Securities and Exchange Act of 1934, and Ms. Engel of violating Section 20(a) of the Act.

II. Discussion

A. Standards

When Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), it heightened the standards for dismissal of securities fraud class action claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Florida State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 660-61 (8th Cir. 2001). The PSLRA requires such a complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."

15 U.S.C. 78u-4(b)(2).

Thus, whereas in most Rule 12(b)(6) motions a court assumes all factual allegations in the complaint to be true, under the Reform Act, a court disregards catch-all or blanket assertions that do not live up to the statute's particularity requirements. See Florida State Bd. of Admin., 270 F.3d at 660-61. In addition, whereas plaintiffs are ordinarily entitled to all reasonable inferences that may be drawn from a complaint, the Act requires that securities fraud allegations collectively add up to a strong inference of the required state of mind. Id. In short, "inferences of scienter survive a motion to dismiss only if they are both reasonable and 'strong.'" Id. The complaint miserably fails to meet the PLSRA's standards.

B. Securities Fraud

The elements of a claim under Section 10(b) of the Securities Exchange Act of 1934 are well known. They are (1) material misrepresentations or omissions, (2) in connection with the purchase and sale of a security, (3) reliance, and (4) causation. Alpern v. Utilicorp United, Inc., 84 F.3d 1525, 1533-34 (8th Cir. 1996). Scienter is an essential element of a Rule 10b-5 claim. Florida State Bd. of Admin., 270 F.3d at 653.

Scienter is "the intent to deceive, manipulate, or defraud." Id. Scienter may be established by proof of knowing or intentional practices to deceive, manipulate, or defraud. Alpern, 84 F.3d at

1534. Negligence is not sufficient, but recklessness also satisfies the scienter requirement. Id.

The Eighth Circuit Court of Appeals has ruled that the PSLRA does not alter these standards. Florida State Bd. of Admin., 270 F.3d at 653. Recklessness, however, is limited to:

> [H]ighly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

Id. Further, for "forward-looking" statements alleged to be materially false or misleading, the scienter requirement is even higher: "actual knowledge" that such statements were false or misleading is required. 15 U.S.C. 78u-5(c)(1)(B)(i) ("[A] person . . . shall not be liable with respect to any forward-looking statement, whether written or oral, if . . . the plaintiff fails to prove that the forward-looking statement . . . was made with actual knowledge . . . that the statement was false or misleading.").

The Court finds, as a matter of law, that this complaint wholly fails to plead any facts giving rise to a strong inference of scienter. In this respect, it is woefully deficient.

The complaint itself recounts repeated disclosures -- except when it purposefully truncates a disclosure to diminish its effect -- throughout the class period, which clearly showed the company was experiencing increasing problems with its new computer

system. These disclosures are summarized above. The Court finds that these disclosures regularly, seasonably, and clearly informed the investing public, and anyone else who cared to read them, that Department 56 had a problem. The disclosures revealed that the problem was getting worse, that it would affect the company's financial results, and that it was caused by the new computer system.

As the company's problems developed, so did its disclosures. Neither the PSLRA, nor law, nor logic requires that a company perceive and advise the public of all of the effects of a problem as it develops; it is impossible to do so. There is no way that within weeks of the computer system's implementation the company could have known all the problems that would develop. This information can only be learned over time and based on experience. An inability to see the future and know its consequences is not a sign of fraud.

This lawsuit is a textbook example of "fraud by hindsight." The Court corrects itself: it might be fraud by hindsight, if it were fraud at all. Instead, this is merely complaint by hindsight. The complaint says only that Department 56 and its CEO failed to know and disclose 15 months in advance all the problems and economic results of a problem which it only perceived through a glass and darkly at the beginning of the class period. This, then, is complaint by hindsight; plaintiff has eliminated the requirement

of fraud.

The complaint states no facts that, if proven, give rise to an inference of scienter, let alone the strong inference required by the PSLRA. The disclosures of problems as they developed do not give rise to an inference of recklessness. The company knew its new computer system was creating problems, but could not know the extent of the problems until they came to pass. And as far as the company's "forward-looking" projections and sales goals in these disclosures are concerned, the complaint fails to plead facts giving rise to a strong inference that defendants actually knew these projections to be false. A company has no obligation to predict the worst possible scenario in order to avoid securities fraud liability.

The PSLRA was "intended to eliminate frivolous securities litigation through its heightened scienter pleading requirements." City of Philadelphia v. Fleming Cos., 264 F.3d 1245, 1263 (10th Cir. 2001). The Act performs its purpose well in this case.

Finally, the Section 20(a) control person claim against Ms. Engel is simply derivative of the defective Section 10-b claim, and must be dismissed as well. See Deviries v. Prudential-Bace Sec., Inc., 805 F.2d 326, 329 (8th Cir. 1996).

C. Statute of Limitations

Section 10(b) claims "must be commenced within one year after the discovery of the facts constituting the violation."

Lampf, Pleva, Lipkind, Prupis & Petrirow v. Gilbertson, 501 U.S. 350, 364 (1991). Because the initial complaint in this action was filed on March 5, 2001, the action is untimely if such discovery took place on or before March 5, 2000. In addition to actual notice of fraud, discovery includes "inquiry notice," which occurs when "the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded." Brogren v. Pohlad, 933 F. Supp. 793, 798 (D. Minn. 1995) ("The one-year limitations period begins when plaintiff is put on inquiry notice of the possibility of fraud.").

The Court finds this action is time-barred under the statute of limitations, because if there was a scintilla of evidence of fraud, it was fully disclosed long prior to March 5, 2000. With great effort, given the facts of this case, the Court assumes the company's disclosures were false or misleading as alleged. But even with this tortured assumption, "storm-warnings" were clearly apparent, at least as early as December 22, 1999.

The complaint itself alleges that the company's December 22, 1999, press release "disclos[ed] for the first time the nature of the customer documentation problems that had only been vaguely alluded to in previous releases." (Complaint ¶ 90.) The complaint further avers that this release "also explained for the first time the reason for the higher rate of customer returns in the 1999 third quarter, as announced on October 26, 1999." (Id. ¶ 91.)

Thus, taking the complaint at its own word, "storm warnings" of the possibility of fraud were absolutely present no later than December 1999. The complaint was filed in March 2001 -- more than two months late. Therefore, it is barred by the statute of limitations.

Plaintiff grasps a last straw to try to save this limping case from a statute of limitations dismissal. Plaintiff claims the date on which a limitation begins is fact-specific, and must be determined by a jury rather than the Court. In support of this contention, plaintiff offers Brogren, 933 F. Supp. at 798-99 ("The Court finds that the appropriate time for such a discovery is a factual inquiry which cannot be resolved on a motion to dismiss."). Although Brogren arose in Minnesota, it was decided before the enactment of the PSLRA. Beyond this, however, even when a case posits the existence of a factual dispute, a court need not submit the question to a jury unless there are significant facts from which a jury could make a different finding. No such facts are present here, if the complaint is taken at its word--and it has been. In this case, no reasonable jury could find that any possible violation was undiscoverable until after March 5, 2000.

III. Conclusion

For the foregoing reasons, the Court finds the complaint fails to state a claim on which relief may be granted. Accordingly, IT IS ORDERED THAT:

Defendants' motion to dismiss the consolidated amended class action complaint is granted. [Docket No. 19.]

Dated: April 3rd, 2002

JAMES M. ROSENBAUM
United States Chief District Judge